IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| INVENSAS CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | No. 2:17-CV-00670-RWS-RSP |
| SAMSUNG ELECTRONICS CO., LTD., | § | |
| and SAMSUNG ELECTRONICS, | § | |
| AMERICA, INC., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

In this patent case, Defendants Samsung Electronics Co. and Samsung Electronics America, Inc. move to transfer this case to the United States District Court for the District of Delaware under 28 U.S.C. § 1404. Defs.' Mot. to Transfer [Dkt. # 43]. After considering the parties' briefing, the Court will deny the motion.

### I.  BACKGROUND

None of the parties are Texas residents. Invensas is a Delaware corporation with its principal place of business in San Jose, California. Compl. [Dkt. # 1] ¶ 2. Samsung Electronics Corporation (SEC) is a Korean company headquartered in Suwon, Korea. Diaz Decl. [Dkt. # 43-40] ¶ 4. Samsung Electronics America (SEA), a wholly owned subsidiary of SEC, is a New York corporation headquartered in Ridgefield Park, New Jersey. *Id.* ¶¶ 3–4. SEA has offices in Richardson, Texas. *Id.* ¶ 3.

In September 2017, Invensas sued Defendants for infringing five United States patents directed to designs and manufacturing processes for semiconductor chips and packages. Compl. [Dkt. # 1]. Specifically, Invensas alleged that Defendants infringe because their consumer products include semiconductor components that practice claims of the asserted patents. *Id.* ¶¶ 19, 32, 44, 58, 72.

In February 2018, Defendants moved to transfer this action to Delaware for two reasons "unique to this action." Defs.' Mot. [Dkt. # 43]. For one, Invensas previously asserted four of the patents in various Delaware actions, so Defendants reason that transfer to a venue already familiar with the patents will increase judicial economy. *Id.* at 9–12. Defendants also contend Invensas's infringement claims invoke forum-selection clauses of two different agreements, and those clauses compel this Court to transfer the action.

The first of those agreements is a 2014 Patent License Agreement (PLA) that expired on December 31, 2016. Patent License Agreement [Dkt. # 43-17] at 23. In the PLA, Invensas granted SEC a license to certain patents it then owned or had the right to sublicense. *Id.* at 1, 20 (¶ 8.15(ee)). Invensas also granted SEC a paid-up perpetual license under certain patents to make, and have made, "Paid Up DRAM Products" and "Paid Up Flash Products." *Id.* ¶¶ 4.5(a), 4.5(b). The PLA defines those terms:

> (rr) "Paid Up DRAM Products" means those Licensee Products that are DDR1 DRAM, DDR2 DRAM, LPDDR1 DRAM, LPDDR2 DRAM and LPDDR3 DRAM (and no other DRAM), in each case only when such products have densities less than or equal to four Gigabits. . . .
>
> (ss) "Paid Up Flash Products" means any Flash die that bears a trademark,

>tradename or similar commercial indicia of Licensee or its Subsidiaries; provided, however that such Paid Up Flash Products are Licensee's or its Subsidiaries' own products and not products of any third party.

*Id.* at 22; *see also id.* at 20–21 (defining LPDDR DRAM, LPDDR2 DRAM, LPDDR3 DRAM, and LPDDR4 DRAM). The PLA's forum-selection clause requires disputes arising under the agreement to be litigated in Delaware. *Id.* ¶ 8.2(b).

But despite invoking the PLA's forum-selection clause, Defendants' motion does not articulate a *current* dispute about whether certain accused products are covered by the PLA. Rather, Defendants simply note (1) that "Invensas's complaint does not include any limitation on the period for which it [seeks] past damages, *suggesting* that the scope of the agreement's license will be disputed in this action"; (2) the PLA "grants a perpetual license covering certain Samsung DRAM and Flash memory products"; and (3) "the scope of that perpetual license *will* be an issue in dispute in this litigation." Defs.' Mot. [Dkt. # 43] at 13 (emphasis added).[1]

The second agreement at issue—entitled "Protected Communications Agreement" (PCA)—limits each party's use of the other parties' "Protected Communications" during litigation. Protected Commc'ns Agreement [Dkt. # 43-18] ¶¶ 1–3. Specifically, the parties agreed to "not seek to obtain through discovery, attempt to admit into evidence or otherwise

---

[1] Defendants' reply *does* identify specific products, but provides only a superficial analysis (at best) of why the products purportedly fall within the PLA's scope. *See* Defs.' Reply [Dkt. # 61] at 2. Invensas's surreply counters that some of the asserted patents are not licensed under the PLA and that the identified DRAM does not have a density less than 4 Gb. Pl.'s Surreply [Dkt. # 65] at 2.

use in any way any Protected Communication of the other party in any legal or administrative proceeding . . . for any purpose whatsoever." *Id.* ¶ 3. Like the PLA, the PCA's forum-selection clause requires disputes about breach or interpretation to be brought in Delaware. *Id.* ¶ 10.

On February 16, 2018—contemporaneously with its response to Defendants' motion to transfer—Invensas amended its pleadings to expressly limit its claim for damages to products not covered by the PLA. Specifically, Invensas expressly excluded damages for any products or components licensed under the PLA, including any damages that may have accrued before the PLA's expiration. Second Am. Compl. [Dkt. # 52] ¶ 17. Invensas further pled that its infringement contentions do not encompass any Samsung products or components licensed under the PLA. *Id.*

Defendants reply that, despite Invensas's amendment to its pleadings, its infringement contentions either accuse licensed products or, alternatively, the parties dispute whether the perpetual license covers certain accused DRAM and Flash products. Either way, say Defendants, the PLA is implicated, which invokes the forum-selection clause and mandates transfer. Defs.' Reply [Dkt. # 61] at 2.

## II.   APPLICABLE LAW

Regardless of whether the plaintiff's chosen venue is proper, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to another district court or division where it might have been brought."

§ 1404(a). This includes any district to which the parties have agreed by contract or stipulation, such as the forum-selection clauses now at issue. *See Atl. Marine Constr. Co. v. U.S. Dist. Court for W.D. Tex.*, 571 U.S. 49, 59 (2013).

In deciding the applicability of the forum-selection clauses, the Court must resolve two issues. First, which forum's law applies to the interpretation of the clause in deciding whether the clause is triggered? Second, applying the proper law to the forum-selection clauses, is either clause triggered in this case?

As to the first issue, "[a] federal court must follow the choice-of-law rules of the state in which it sits." *St. Paul Mercury Ins. Co. v. Lexington Ins. Co.*, 78 F.3d 202, 205 (5th Cir. 1996). Texas generally honors contractual choice-of-law provisions. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677–78 (Tex. 1990). Here, the parties chose Delaware law for resolving any disputes concerning both the PLA and PCA. Delaware law therefore applies for purposes of interpreting the forum-selection clauses.

As to the second issue, Delaware law requires courts to interpret clear and unambiguous terms according to their ordinary meanings. *GMG Capital Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 780 (Del. 2012). "Contract terms themselves will be controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language." *Id.* (quoting *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997)); *see also Hill Int'l, Inc. v. Opportunity Partners L.P.*, 119 A.3d 30, 38

(Del. 2015) (noting that when contract language is "unambiguous, the court need not interpret it or search for the parties' intent").

## III. DISCUSSION

### A. The Patent License Agreement

Even if Invensas's original pleadings and initial infringement contentions implicated the PLA's forum-selection clause, Invensas mooted any dispute by expressly amending its pleadings to exclude (1) damages that may have accrued before December 31, 2016, and (2) "any Samsung products or components that continue to be licensed under the PLA." First Am. Compl. [Dkt. # 52] ¶ 17. Moreover, Defendants have not shown Invensas's contentions give rise to a legitimate dispute as to whether a specific product or component is licensed under the PLA, or that the PLA is ambiguous and requires interpretation.

Although Defendants allege a dispute as to what accused products are covered by the perpetual license, Defs.' Reply [Dkt. # 61] at 2, they offer no evidence showing such a dispute legitimately exists. Defendants merely identify products they contend give rise to a dispute, without providing any specific analysis as to whether the identified products have densities less than 4 Gb (in the case of DRAM) or bear Samsung's trademark or tradename (in the case of flash memory). Nor do Defendants show that all the asserted patents are licensed under the PLA.[2]

---

[2] Invensas, for example, contends that Defendants complain about (1) contentions relating to asserted patents that are not licensed under the PLA and (2) DRAM that does not have a density less than 4 Gb and therefore does not fall within the definition of "Paid Up DRAM Products." Pl.'s Surreply [Dkt. # 65] at 2.

Absent a showing by Defendants of a legitimate, non-frivolous dispute between the parties as to whether an accused product is covered by the PLA, or that specific terms of the PLA require some interpretation as to their meaning to make that determination, the Court cannot find the PLA's forum-selection clause triggered.

### B. The Protected Communications Agreement

Defendants claim that Invensas must rely on pre-suit communications between the parties to prove its willful-infringement claims, but provides no evidence Invensas has done so yet. Defendants only contend it *might* become an issue. Defs.' Resp. [Dkt. # 61] at 3–4 (noting "Invensas *may* rely on communications from Samsung to prove Samsung's state of mind" (emphasis added)); *see also* Defs.' Mot. [Dkt. # 43] at 13 (contending "the PCA's scope *will likely* be an issue in dispute" (emphasis added)). Indeed, that *might* happen, but the Court is not convinced it is inevitable.[3] Absent a *present* dispute under the PCA, its forum-selection clause is not triggered. To find otherwise would run contrary to the parties' intent when they executed the PCA.

### C. Defendants' Judicial-Efficiency Argument

Defendants implicitly acknowledge this case could not have been brought in Delaware against SEA if neither forum-selection clause applies. *See* Defs.' Mot. [Dkt. # 43] at 8. Having concluded the clauses are not applicable, the Court need not address Defendants'

---

[3] For example, assuming Invensas *must* disclose Protected Communications to prove its willful infringement claim, as Defendants allege, Invensas may opt to dismiss the willfulness claim rather than risk transfer under the PCA's forum-selection clause.

judicial-efficiency argument.

## IV.   CONCLUSION

Because Defendants have not shown that either forum-selection clause is currently triggered by the scope of infringement as alleged by the First Amended Complaint, the Court **DENIES** Defendants' Motion to Transfer [Dkt. # 43].

**SIGNED this 13th day of August, 2018.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE