# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| INVENSAS CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 2:17-cv-00670-RWS-RSP |
| | § | |
| SAMSUNG ELECTRONICS CO., LTD., | § | |
| ET AL, | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff filed its Second Motion to Compel Discovery [Dkt. #168].[1] This Motion to Compel seeks relief on two issues: (1) whether Defendants are required to provide financial data on all infringing sales made by the Defendant Samsung Electronics Co., Ltd. ("SEC") in this case; and (2) whether Defendants are required to provide financial data for chips used in Samsung's non-mobile products.[2] Pl.'s Mot.; 10/12/18 Hr'g Tr. at 5:8–6:16 [Dkt. #190].

The Court has reviewed the briefing for this Motion to Compel and arguments made on this Motion at the October 12, 2018 Hearing. After consideration, this Motion will be GRANTED IN PART. Plaintiff's Motion to Compel is GRANTED with respect to the first issue of whether Defendants are required to provide financial data on all infringing sales

---

[1] Defendants filed a Response [Dkt. #181] to this Motion to Compel.
[2] The Plaintiff also argued that it was entitled to discovery related to Qualcomm Snapdragon Processors, but the Parties have resolved this issue.

made by SEC. Plaintiff's Motion to Compel is DENIED for the issue of whether Defendants are required to provide financial data for chips used in non-mobile products.

## I.    Defendants are Required to Provide Financial Data on All Infringing Sales Made by SEA.

Background knowledge on the Samsung business structure is necessary. At the highest level, SEC is the parent company and one of the defendants in this case. 10/12/18 Hr'g Tr. at 20:23–25. Samsung Electronics America, Inc. ("SEA") is a subsidiary of SEC, and SEA is also one of defendants in this case. *Id*. Samsung Semicondutor Inc. ("SSI") and Samsung Austin Semiconductor LLC ("SAS") are both subsidiaries to SEA. *Id*. at 25:17–18. Neither SSI nor SAS are Defendants in this case.

Plaintiff alleges that SEA and SEC have both infringed the asserted claims through direct and induced infringement.  Am. Compl. ¶ 33 [Dkt. #52]; 10/12/18 Hr'g Tr. at 27:16–18. Plaintiff argues that it is entitled to discovery of products that SEC sells or imports into the United States. Pl.'s Mot. at 4.

Defendants have only provided financial data for sales made by SEC to SEA. 10/12/18 Hr'g Tr. at 5:9–12 [Dkt. #190]. According to Defendants' counsel, "SSI would enter into a contract with a company like HP. . . . And then SEC would deliver those products to the customer. But SEC does not sell to a customer in the United States. The sales occur through SSI." Id. at 20:17–22. Consequently, Defendants have made the decision not to provide discovery about any of the sales that SEC did through SSI, even if the customers are located in the United States and the product was shipped by SEC to the

2

United States. *Id*. at 22:1–13. Plaintiff also argues that SEC makes sales directly to customers in the United States. *Id*. at 29:18–22.

Defendants argue that Plaintiff has made inconsistent statements to other courts and that these allegedly inconsistent statements justify Defendants' refusal to provide the requested financial information. *Id*. at 19:17–20:2. Plaintiff has filed an additional action in the District of Delaware against SAS. *Id*. at 19:23–25; *Invensas Corporation v. Samsung Electronics Co., Ltd. et al*, DED-1-17-cv-01363-MN-SRF (D. Del.). According to Defendants, Plaintiff "has said to this Court . . . that it could not capture sales by SAS in this case because of TC Heartland. . . . [F]or that matter, it filed a separate lawsuit to try and capture those sales in Delaware. Yet at the same time it's say[ing] that it is entitled to capture the sales by another Samsung entity, SSI." 10/12/18 Hr'g Tr. at 19:21–20:2.

The Court disagrees with Defendants' argument. A distinction exists between SSI and SAS. SAS manufactures chips. *Id*. at 28:15–18. When SAS manufactures a chip and sells it, then there would be no act of infringement by SEC. By contrast, SSI is a sales organization that does not manufacture chips. *Id*. at 20:10–14. SSI must have title to a product before it may sell it. Accordingly, SEC must transfer title of the products to SSI before the sale. This transfer is a potentially infringing sale, and Plaintiff is entitled to discovery of financial data for these sales.

When asked about whether SEC sold any products directly to customers in the United States, Defendants' counsel stated that "I can't say no, because there may be that -- that instance. But I would say that the bulk of the sales are to large corporate entities where in most cases the assembly -- we're talking about memory modules and SSDs that would

go into laptops." *Id.* at 21:7–16. Accordingly, whether SEC sells these products directly to customers in the United States remains unclear.

Additionally, the Court previously addressed this issue in its Order Granting Plaintiff's Motion to Compel Discovery from Defendants. *See* 7/02/18 Order [Dkt. #107]. "By no later than August 11, 2018, [Defendants] shall provide relevant financial discovery (e.g., Invensas' Interrogatory No. 6) within its possession, custody, or control for each and every identified accused component for all of the patents-in-suit, including each Exemplary Component and each component within each Component Group specified in the Stipulation." *Id.* at 2. In compelling discovery from "Samsung," the Court is compelling discovery from both SEA and SEC. The language of the Order does not allow Defendants to merely provide financial discovery for sales from SEC to SEA.

Plaintiff has not disclaimed sales by SEC, and the record shows that Plaintiff is seeking sales by either SEC or SEA into the United States. For the reasons stated above, Defendants are ORDERED to provide financial data for sales from SEC to SSI. Defendants are further ORDERED to investigate whether SEC has sold alleged products directly to customers in the United States. If SEC has sold products directly to customers in the United States, then Defendants are ORDERED to provide financial data for those sales as well.

## II.    Defendants are not required to provide financial data for any chips provided in non-mobile products.

The parties do not dispute that Plaintiff is entitled to financial data for accused chips provided within mobile products such as smartphones, tablets, laptops, and portable storage. Defs.' Resp. at 2. However, the parties dispute whether Plaintiff is entitled to

financial data for chips provided within non-mobile products such as refrigerators or televisions. Pl.'s Mot. at 4; Defs.' Resp. at 3–4. The Court concludes that at this stage of this case the Defendants should not be required to provide financial data for chips provided in non-mobile products.

Plaintiff argues that it has consistently alleged infringement for DRAM and SSD chips and that these chips are found in non-mobile products. 10/12/18 Hr'g Tr. at 6:7–8; 37:19–22; 47:21–25. Defendants argue that discovery of chips in non-mobile products is inappropriate and that Plaintiff's "pleadings, discovery requests, and infringement contentions—including its August 26, 2018 amended contentions—have all defined the accused end products as mobile products, such as smartphones, tablets, laptops, and portable storage." Defs.' Resp. at 2.

Through their arguments presented through briefs and hearings, the parties have developed a timeline for the resolution of this issue. Plaintiff argues that Defendants had notice of the issue by June 13, 2018 at the latest. Pl.'s Mot. at 4. On that date, Defendants briefly discussed the issue in a hearing. 6/13/18 Hrg. Tr. at 36:14–18, 44:6–11. Plaintiff asserts that financial discovery was required by August 11, 2018 and that Defendants produced somewhere around 300 to 400 documents on that date. 10/22/18 Hr'g Tr. at 49:5–11. Defendants then made supplemental productions, and Plaintiff had to get witnesses to decipher the information. *Id*. at 49:12–15. On August 27, 2018, Plaintiff raised the issue with Defendants. Defs.' Resp. at 3; 10/22/18 Hr'g Tr. at 46:2–3. On September 4, 2018, the parties participated in a hotline call with the Court. 10/22/18 Hr'g Tr. at 46:4–5. The

close of discovery arose on September 18, 2018. 7/02/18 Docket Control Order [Dkt. #108].

The Court declined to order this discovery on the hotline call but offered to consider expedited briefing, and Defendant argues that Plaintiff never contacted Defendants about this briefing or negotiated a schedule for expedited briefing. *Id*. at 46:2–18; Defs.' Resp. at 3. "And then fact discovery closed on September 18th. And then the next day, they, again, were asking about non-mobile products." 10/22/18 Hr'g Tr. at 46:2–18.

Defendants argue that Plaintiff's "pleadings, discovery requests, and infringement contentions—including its August 26, 2018 amended contentions—have all defined the accused end products as mobile products, such as smartphones, tablets, laptops, and portable storage." Defs.' Resp. at 2. Defendants point to the Amended Complaint, which states that "[t]he accused products include, but are not limited to, Samsung's Galaxy S6, S7, S8, and Note8 devices." Am. Compl. at ¶ 16 [Dkt. #52]. Defendants produced "technical and financial discovery on 338 reasonably similar chips and 261 end products containing these chips," limiting the information disclosed to chips within mobile products. Defs.' Resp. at 1.

If Defendants are required to disclose financial information for accused chips in non-mobile products, Defendants contend that they would suffer a great burden in identifying the accused chips. Defendants assert that no easy way exists to identify all products containing these chips and that they would be required to search for the chips by looking inside each individual product. *Id*. at 44:4–15. Defendants assert that they sell "hundreds of non-mobile products" and possess at least "30 different models of televisions,

6

52 models of refrigerators, 38 ranges and ovens, 18 microwaves, 48 washers and drivers [sic], and 25 home security or sensor products." *Id*. at 46:19–25. According to Defendants, obtaining this information could take up to two additional months. Defs.' Resp. at 2.

Defendants' counsel notes that this is a "highly specialized industry" and that "[e]very chip is optimized for a particular purpose." 10/22/18 Hr'g Tr. at 45:9–11. According to Defendants' deposition witness, the accused chips are designed for use in mobile products. Defs.' Resp. at 3 (citing 9/5/18 Kim Dep. Tr. at 321:13–322:14). Further, Defendants' counsel has suggested that it is unlikely that "the DRAMs just in general that were accused specifically in this case are the same chips that are used in other kinds of products." 10/22/18 Hr'g Tr. at 45:11–14.

Plaintiff argues that the infringing DRAM and SSD chips are found in non-mobile products. *Id*. at 35:9–23; 36:7–10. In Plaintiff's presentation at the October 22, 2018 Hearing, it points out a Samsung webpage stating that "Samsung's DRAM drives innovation and accelerates performance in various computing solutions, from PCs to servers for advanced AI applications." DRAM, SAMSUNG (Oct. 30, 2018, 4:35 PM), https://www.samsung.com/semiconductor/dram/; Pl.'s 10/22/18 Hr'g Slides 23 [Dkt. #188-2]. Plaintiff contends that this webpage shows that infringing DRAM chips may be found within non-mobile products. 10/22/18 Hr'g Tr. at 48:9–17.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the

discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

While financial information for DRAM and SSD chips within non-mobile products may be relevant to Plaintiff's case, requiring Defendants to disclose this information is not proportional to the needs of this case. The burden on the Defendants if they were required to acquire and disclose this information at this stage of the proceedings outweighs the likely benefit of the information.

Even if some infringing DRAM and SSD chips may be found within non-mobile products, Plaintiff has waited too long before bringing this to Defendants' attention. Plaintiff could have addressed this issue by contacting Defendants about expedited briefing for the issue after the hotline call, but it chose not to do so. Plaintiff claims that it provided notice to Defendants of this issue at some point prior to June 13, 2018. However, Plaintiff did not file this Motion to Compel until September 19, 2018, over three months later and one day after the close of fact discovery. The Court finds that Plaintiff could have resolved this issue at an earlier time and that its delay creates too great of a burden on Defendants.

Further, the likely benefit of requiring such discovery is small as it appears unlikely that many infringing chips will be found in non-mobile products. According to Defendants' deposition witness, the accused chips are used only in mobile products and are not used in non-mobile products. Defs.' Resp. at 3 (citing 9/5/18 Kim Dep. Tr. at 321:13–322:14). Defendants' counsel notes that this is a "highly specialized industry" and that "[e]very chip is optimized for a particular purpose," making it unlikely that "the DRAMs just in general that were accused specifically in this case are the same chips that are used in other kinds

8

of products." 10/22/18 Hr'g Tr. at 45:9–14. Plaintiff argued that these chips could be found in non-mobile products, pointing to Defendants' website which stated that DRAM may be found on PCs. Pl.'s 10/22/18 Hr'g Slides 23 [Dkt. #188-2]. DRAM, SAMSUNG (Oct. 30, 2018, 4:35 PM), https://www.samsung.com/semiconductor/dram/. While this may be evidence that some potentially infringing DRAM chips may be found in PCs, Plaintiff has not produced evidence to show that a large number of accused chips may be found within non-mobile products. Granting this portion of the Motion is unwarranted in light of the burden that would be imposed upon the Defendants at this late stage of the case.

The Court finds that the burdens imposed on Defendants if this part of the motion were granted outweigh the potential benefits, and was not timely pursued with the Defendant and the Court. Accordingly, the Court will DENY this portion of Plaintiff's Motion to Compel.

## III.    Conclusion

Plaintiff's Motion to Compel is GRANTED with respect to the first issue, and Defendants are required to provide financial data on all such sales made by SEC within 15 days.

Plaintiff's Motion to Compel is DENIED for the issue of whether Defendants are required to provide financial data for chips provided in non-mobile products.

**SIGNED this 6th day of November, 2018.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE