**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| INVENSAS CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 2:17-cv-00670-RWS-RSP |
| | § | |
| SAMSUNG ELECTRONICS CO., LTD., | § | |
| ET AL, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Defendants filed their Opposed Renewed Motion to Transfer Under 28 U.S.C. § 1404(a) [Dkt. #163].[1] The Court previously denied transfer in a Memorandum Opinion entered on August 14, 2018 [Dkt. #145]. In that order, the Court noted that it was speculative at the time as to whether the Protective Communications Agreement ("PCA") would be implicated. *Id*. In their Renewed Motion, Defendants argue that Plaintiff's recent actions create a present dispute under the PCA. Defs.' Renewed Mot. 4–7. Consequently, Defendants argue that the PCA's forum selection clause applies, making transfer to the District of Delaware appropriate. *Id*.

After consideration of the briefing and the parties' arguments at the October 12, 2018 hearing, the Court now concludes that this case now involves a present dispute under the PCA, that the PCA's Forum-Selection Clause now applies, and that Defendant's Renewed Motion to Transfer should therefore be GRANTED.

---

[1] Plaintiff filed a Response [Dkt. #172], Defendant filed a Reply [Dkt. #173], and Plaintiff filed a Sur-Reply [Dkt. #179].

**BACKGROUND**

Plaintiff Invensas is a Delaware corporation with its principal place of business in San Jose, California. Original Compl. ¶ 2 [Dkt. # 1]. Defendant Samsung Electronics Corporation (SEC) is a Korean company headquartered in Suwon, Korea. Diaz Decl. ¶ 4 [Dkt. # 43-40]. Defendant Samsung Electronics America (SEA), a wholly owned subsidiary of Defendant SEC, is a New York corporation headquartered in Ridgefield Park, New Jersey. *Id.* at ¶¶ 3–4. Defendant SEA has offices in Richardson, Texas. *Id.* at ¶ 3.

In September 2017, Plaintiff sued Defendants for infringing five United States patents directed to designs and manufacturing processes for semiconductor chips and packages. Original Compl. Specifically, Plaintiff alleged that Defendants infringe because their consumer products include semiconductor components that practice claims of the asserted patents. *Id.* at ¶¶ 19, 32, 44, 58, 72.

The parties had previously entered into a Protected Communications Agreement ("PCA"), and this PCA limits each party's use of the other parties' "Protected Communications" during litigation. Protected Commc'ns Agreement ¶¶ 1–3 [Dkt. # 43-18]. The PCA defines a "Protected Communication" as "any information or material disclosed by one party to the other party, during the Term, that is . . . marked . . . [in a] manner to indicate its confidential nature." *Id.* at ¶ 2. The definition of "Protected Communication" also includes "any oral information disclosed by one party to the other party, provided that prior to making such disclosure such information is designated as confidential." *Id.* The parties agreed to "not seek to obtain through discovery, attempt to admit into evidence or otherwise use in any way any Protected Communication of the other party in any legal or administrative proceeding . . . for any purpose whatsoever." *Id.* at ¶ 3. The

PCA's forum-selection clause requires disputes about breach or interpretation to be brought in Delaware. *Id*. at ¶ 10.

In February 2018, Defendants filed a Motion to Transfer this action to Delaware. Defs.' Original Mot. [Dkt. # 43]. Defendants also contended that Plaintiff's infringement claims would likely make the PCA's scope an issue in dispute. *Id*. at 13. Based on this premise, the Defendants argued that the PCA's forum-selection clause applied, making a transfer appropriate. *Id*. at 12–14.

The Court denied Defendants' Motion to Transfer. *Invensas*, 2018 WL 3862060, at *1. The Court reasoned that, at the time, Defendants had not provided any evidence that Plaintiff had violated the PCA. *Id*. at *3. While Defendants contended that the PCA might become an issue, the Court was not convinced that a dispute was inevitable. *Id*. Accordingly, the Court determined that no present dispute existed and found that the forum-selection clause was not triggered. *Id*.

Defendants now file a Renewed Motion to Transfer. In this Renewed Motion, Defendants argue that Plaintiff's recent deposition questioning of Joonil Lee created a present dispute under the PCA. Defs.' Renewed Mot. 4–7. In response, Plaintiff argues that none of the disputed questioning involves a "Protected Communication" and that the PCA is therefore inapplicable. Pl.'s Resp. to Renewed Mot. Transfer 5–8. This deposition occurred on a September 3, 2018. Lee Dep. Tr. Accordingly, it arose after the Court issued its order on August 14, 2018. *Invensas*, 2018 WL 3862060.

One line of questioning touched on an email sent by from Jay Shim to Paul Davis. Email From Jay Shim, Samsung's VP, to Paul Davis, Plaintiff's counsel (Apr. 11, 2018, 9:35 PM) [Dkt. #163-6]. Shim was serving as Samsung's Vice President of IP Licensing and General Counsel at the time of the email. *Id*; Defs.' Renewed Mot. 4. Davis was serving as General Counsel of Invensas's parent, Xperi, at the time of the email. *Id*. Plaintiff's questioning proceeded as follows:

> Q. And do you see that just above that page, page 4, with Paul Davis's email, there's a response from Jay Shim dated April 11, 2016?
> A. Yes.
> Q. And do you see he says to Paul in this email: "You told me that you will provide claim charts, not a patent list. This is not helpful and will definitely prolong the process. As I told you in advance to any technical meeting, I would like to review your claim charts." Do you see that?
> A. Yes.
> Q. When he says "patent list," Jay is referring to the list that we looked at in J. Lee 10, is that correct? . . .
> THE WITNESS: It seems so.
> BY MR. O'DONOHUE: Q. Why is a patent list not helpful? . . .
> THE WITNESS: I don't know.

Defs.' Renewed Mot. 4; Lee Dep. Tr. 95:4–24 [Dkt. #163-4].

Defendants argue that the April 11, 2018 email was "part of an email string with [Plaintiff] that was confidential given its subject matter . . . and [Plaintiff's] own confidentiality markings" in previous emails within the chain. Defs.' Reply in Support of Renewed Mot. 4 [Dkt. #173] (citing Emails Between Davis and Shim). Consequently, Defendant alleges that the April 11, 2018 email was confidential and a "Protected Communication," making the questioning a violation of the PCA. Defs.' Renewed Mot. 4; Defs.' Reply in Support of Renewed Mot. 4 [Dkt. #173]. Plaintiff concedes that these emails constitute a communication. Pl.'s Resp. Renewed Mot. 8. However, Plaintiff argues that the email is not a "Protected Communication" because Defendants did not mark the email as confidential as required under the PCA. *Id*. Accordingly, Plaintiff contends that it did not violate the PCA. *Id*.

### I. APPLICABLE LAW

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

In applying the provisions of § 1404(a), the "first determination to be made is whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). This includes any district to which the parties have agreed by contract or stipulation, such as the forum-selection clauses now at issue. *See Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 59 (2013).

If the claim could have been filed in the proposed district, then the court will analyze a number of public and private-interest factors to determine whether transfer is convenient for the parties and whether it is in the interests of justice. *In re Volkswagen AG*, 371 F.3d at 203. The public-interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law. *Id*. The private-interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Id*.

An applicable forum-selection clause has a significant impact on the § 1404 analysis. *See Atl. Marine*, 571 U.S. at 59–60, 63–64. "[P]roper application of § 1404 requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Id*. (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)). The presence of a valid and applicable forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways:

> First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the

> burden of establishing that the transfer to the forum for which the parties bargained is unwarranted. . . . Second, a court evaluating a defendant's §1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private-interests. When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum. . . . Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a §1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations.

*Id.* at 63–64.

## II. ANALYSIS

### a. A Present Dispute Now Exists Under the PCA, so the Forum-selection Clause Now Applies to this Action.

A present dispute exists over whether the email sent from Shim to Davis constitutes a "Protected Communication." Plaintiff concedes that these emails are communications. Pl.'s Resp. Renewed Mot. 8. Further, a factual dispute exists over whether the email in dispute is protected. Plaintiff argues that the email is not a "Protected Communication" because Defendants did not mark their responses as confidential as required under the PCA. *Id*. Defendants argue that their emails were "part of an email string with Invensas that was confidential given its subject matter" and that Plaintiff's own confidentiality markings in previous emails within the chain made the email sent by Shim confidential. Defs.' Reply in Support of Renewed Mot. 4 (citing Emails Between Paul Davis and Jay Shim).

At the very least, a factual dispute exists for the issue of whether the email constituted a "Protected Communication." The definition of "Protected Communication" includes "any information or material disclosed by one party to the other party, during the Term, that is in written,

graphic, machine readable or other tangible form and is marked . . . in some other manner to indicate its confidential nature at the time of disclosure." Protected Commc'ns Agreement ¶ 2. Because a previous email within the chain was marked as confidential, Defendant can reasonably argue that the specific email within the chain was marked in some manner "to indicate its confidential nature at the time of disclosure." Thus, a reasonable dispute exists as to whether Shim's April 11, 2016 email is a "Protected Communication."

Assuming that this email constitutes a "Protected Communication," it is at least arguable that the PCA would be violated. The PCA forbids "us[ing] in any way any Protected Communication of the other party in any legal or administrative proceeding . . . for any purpose whatsoever." Protected Commc'ns Agreement ¶ 3. Plaintiff's questioning was in a deposition, so these emails were being used in a legal proceeding.

Because the email could reasonably constitute a "Protected Communication," a present dispute exists for at least the issue of whether the deposition questioning regarding Shim's email violated the PCA.[2] As a result, the forum-selection clause within the PCA now applies to this action.[3]

### b. The Public and Private-interest Factors Now Justify Transfer to the District of Delaware

It is clear that this case could have been filed in the District of Delaware. A case may be filed in "any district to which the parties have agreed by contract or stipulation, such as the forum-

---

[2] Because the Court concludes that a present dispute exists as to whether the PCA has been violated through Plaintiff's questioning on this email, the Court will not offer any opinion on whether Plaintiff's other questioning creates a present dispute.
[3] Plaintiff also stated that it would be willing to drop the willfulness claim to eliminate any disputes over the PCA. However, the Court concludes that a present dispute already exists and that dropping the willfulness claim at this stage would not affect the analysis.

selection clauses now at issue." *See Atl. Marine*, 571 U.S. at 59. By agreeing to the PCA, the parties have also agreed to the forum-selection clause.

Because the forum-selection clause of the PCA now applies to this action, the § 1404 analysis is altered as stated in *Atlantic Marine*. When "evaluating a defendant's §1404(a) motion to transfer based on a forum-selection clause," this Court must "deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id*. at 64. Plaintiff now "bears the burden of establishing that the transfer to the forum for which the parties bargained is unwarranted." *Id*. Because the forum-selection clause applies and all of the private-interest factors favor transfer, Plaintiff must show that the public-interest factors weigh substantially against transfer. Plaintiff has not made this showing here as none of the public-interest factors weigh strongly enough to justify denying transfer here.

The first public-interest factor, administrative difficulties flowing from court congestion, does not weigh significantly in favor of transfer. The Court viewed data for the number of cases and the time duration for civil cases that terminated between April 1, 2017 and March 31, 2018 in each district. Table C-5—U.S. District Courts—Civil Statistical Tables for the Federal Judiciary (December 31, 2017), http://www.uscourts.gov/statistics/table/c-5/federal-judicial-caseload-statistics/2018/03/31. The median time for these cases to proceed from filing to trial in the District of Delaware was 29.6 months. *Id*. The same figure for the Eastern District of Texas was 19.9 months. *Id*. This suggests that transfer would not be appropriate, but this factor is still not strong enough to prevent a transfer in view of the other factors.

The local interest in having localized interests decided at home is a relatively neutral factor. Plaintiff acknowledges that Defendant Samsung Electronics America has a facility in Richardson, TX. Am. Compl. ¶ 9 [Dkt. # 52]. Richardson is within the Eastern District, so this forum has a

localized interest in this case. Plaintiff is a Delaware corporation, Am. Compl. ¶ 2 [Dkt. # 52], so the District of Delaware has a localized interest in resolving this dispute in its own courts. Because both forums have a localized interest in this case, the Court finds that this factor is neutral at best for Plaintiff.

The familiarity of the forum with the law that will govern the case factor suggests that transfer is appropriate. As discussed above, a present dispute now exists concerning the PCA. The parties chose Delaware law for resolving any disputes concerning the PCA. Protected Commc'ns Agreement ¶ 10. Consequently, Delaware law will apply for the purposes of interpreting the forum-selection clause. Because the District of Delaware will likely be more familiar with Delaware law, this third public-interest factor weighs in favor of a transfer.

The fourth public-interest factor, the avoidance of unnecessary problems of conflicts of laws of the application of foreign law, is inapplicable here. Accordingly, this factor is neutral. Because none of the public-interest factors weigh strongly against transfer and because all of the private-interest factors weigh in favor of transfer, the Court concludes that transfer is now appropriate.[4]

### III.   CONCLUSION

The Court concludes that Defendant's Renewed Motion to Transfer should be GRANTED. It is therefore ORDERED that this case be transferred to the District of Delaware.

**SIGNED this 7th day of November, 2018.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

---

[4] The Court notes that this ruling is consistent with the Court's ruling in *Tessera Advanced Techs., Inc. v. Samsung Elecs. Co.* 2:17-cv-00671-JRG (E.D. Tex. Sept. 5, 2018).